734 So.2d 650 (1999)
STATE of Louisiana, Appellee,
v.
Ricky Dewayne MONTGOMERY, Defendant-Appellant.
No. 98-775.
Court of Appeal of Louisiana, Third Circuit.
January 27, 1999.
*651 Ronald Brandon, Don M. Burkett, Many, for State of La.
Charles D. Soileau, Many, for Ricky Dewayne Montgomery.
Before: DOUCET, C.J., YELVERTON, and AMY, JJ.
DOUCET, Chief Judge.
On August 21, 1997, the Defendant, Ricky Dewayne Montgomery, was charged by bill of information with the illegal possession of a schedule II substance (cocaine), a violation of La.R.S. 40:967(C). A jury of twelve convicted the Defendant of the lesser responsive charge of attempted possession of a schedule II substance (cocaine) on December 8, 1997. Thereafter, on February 24, 1998, the Defendant was sentenced to serve two and one-half years with the Louisiana Department of Corrections. The Defendant appeals his conviction.

FACTS
On the afternoon of June 15, 1997, Officers Murphy and Hembree of the Many City Police Department were called to investigate the occupants of a blue Chrysler. The Defendant was arrested when a box containing cocaine was discovered beneath the vehicle. Subsequent to the arrest, additional cocaine was found in the passenger compartment of the vehicle. Additional facts of the case will be discussed in the assignments of error.

ERRORS PATENT
In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by the court for errors patent on the face of the record. After reviewing the record, we find there is one error patent.
The minutes and the transcript for jury selection show defense counsel waived the Defendant's presence for at least a portion of jury selection. Before voir dire, the trial court noted the Defendant was getting dressed and asked defense counsel if he "would be kind enough to go ahead and waive his presence." Defense counsel waived the Defendant's presence. The transcript of jury selection is not included in the record; thus, it is unclear at what time the Defendant arrived. However, the District Attorney points to the Defendant in his opening statement, stating, "That's Ricky Montgomery right there." Thus, it is clear the Defendant was present for the introduction of evidence. According to the minute entry, the Defendant was present after the selection of the jurors, but before the sequestration of witnesses (which was before the State's opening statement).
Although it is clear from the record that the Defendant arrived at least before the State's opening statement, it is unclear if he was present during any of the jury selection. According to La.Code Crim.P. art. 831, the Defendant must be present at jury selection. La.Code Crim.P. art. 832 which was amended effective August 15, 1997, before the Defendant's trial, reads in pertinent part:
A. A defendant initially present for the commencement of trial shall not prevent the further progress of the trial, including the return of the verdict, and shall be considered to have waived his right to be present if his counsel is present or if the right to counsel has been waived and:
(1) He voluntarily absents himself after the trial has commenced, whether or not he has been informed by the court of his obligation to be present during the trial; or
(2) After being warned by the court that disruptive conduct will cause him to be removed from the courtroom, he persists in conduct which justifies his exclusion from the courtroom.
*652 The comments to this article state the purpose of the change as follows: "The article changes the law by declaring that the defendant's voluntary absence, after the commencement of trial, will not prevent the further progress of trial. It also codifies Louisiana jurisprudence which recognizes the trial court's authority to exclude a disruptive defendant." Although the purpose of the article was to prevent a defendant from preventing the progress of trial, technically, the article does not apply when a defendant is not present at the commencement of trial. The old Article did apply to such a situation.
Our research has not found any cases interpreting the 1997 version of La.Code Crim.P. art. 832. The only case found on point applied the old Article 832. In State v. Johnson, 95-1002 (La.App. 3 Cir. 3/6/96); 670 So.2d 651, this court addressed a situation very similar to the present casei.e. the court minutes reflected the defendant formally waived his presence for the beginning of jury selection. Finding his absence did not constitute error, this court reasoned:
Defendant's counsel was present, and defendant appeared after lunch on that same date. Although jury selection is a phase of trial in which the defendant must be present according to La.Code Crim.P. art. 831, `[a] defendant charged with a felony not punishable by death cannot object to his temporary voluntary absence at the proceedings listed in Article 831 if his counsel was present.' La.Code Crim.P. art. 832. Defendant did not object to his absence; thus, his absence did not constitute error.
Id. at 660.
Although Johnson is distinguishable (the old Article 832 was in effect), we find its analysis is still applicable. The revised article 832 neither permits nor prohibits an attorney from waiving a defendant's presence at the commencement of trial. In light of the legislature's obvious intent to lessen the requirements that a defendant be present at all proceedings of trial, and in light of the fact that the Defendant in the present case has not complained about his absence, we find that if his absence was an error, it was harmless error.
We base that conclusion on the following analysis. In State v. Bolden, 95-749 (La. App. 3 Cir. 4/17/96); 680 So.2d 6, writ denied, 96-1272 (La.11/22/96); 683 So.2d 286, cert. denied, 513 U.S. 1077, 115 S.Ct. 724, 130 L.Ed.2d 629 (1995), this court applied the harmless error analysis in a situation where the defendant was not present when the trial court instructed the general venire on specific points of law. The Defendant had waived his presence during the initial qualification of the voir dire, but he claimed he had not waived his presence where legal instruction was involved. As discussed by the court, "trial errors" are subject to the harmless error analysis, while "structural errors" are not. Although the court found the error did not exactly fit the definition of a "trial error,"the court stated "it was the type of error that may be `quantitatively assessed' in light of the rest of the trial proceedings." Id. at 27. Applying the harmless error analysis, this court stated:
Although the trial judge erred in making the comments at issue, we conclude that such error was harmless to the defendant. Under the present facts, it is clear that the guilty verdict in this trial was unattributable to this error. For these reasons, even if error occurred, it was clearly harmless, as there was no reasonable likelihood the general legal ideas outlined before voir dire contributed to the defendant's conviction and sentence in this trial.
Id.
In the case sub judice, the Defendant has not complained of any errors involving voir dire.
In Sullivan v. Louisiana, 508 U.S. 275, 277, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993), the court stated that the test for harmless error "is not whether, in a trial that occurred without the error, a *653 guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error."
Id. at 26.
As it is clear from the record that had the Defendant been present during the portion of the trial from which he absented himself, the outcome would have been no different. Accordingly, if an error occurred, it was harmless.

ASSIGNMENT OF ERROR
By this assignment, the Defendant seeks to establish that the evidence presented at trial was insufficient to support his conviction for attempted possession of cocaine. In particular, it is the Defendant's contention that: a) the evidence presented did not establish possession or an attempt at possession; b) the circumstantial evidence was insufficient to support the conviction; and c) the jury erroneously applied the law of attempt since no evidence was adduced relative to any acts for the purpose of and tending directly toward the accomplishment of possession.
It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance. La.R.S. 40:967(C). An individual who does or omits an act tending directly toward possessing cocaine can be found guilty of attempted possession. However, an attempt is a separate but a lesser grade of the intended crime. A person may be convicted of an attempt to commit a crime, even though it appears at trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt. La.R.S. 14:27.
As previously recounted, the Defendant was convicted of the responsive charge of attempted possession of cocaine. Therefore, the initial inquiry is whether there was sufficient evidence presented at trial to uphold the conviction of attempted possession of cocaine. If this court had determined that there was insufficient evidence presented at trial to uphold the conviction of attempted possession of cocaine, the inquiry would not end. Louisiana juries have the authority to return compromise verdicts; therefore, a subsequent determination would be made as to whether there was sufficient evidence presented at trial to uphold a conviction of actual possession of cocaine.[1] However, in the case sub judice, such was not the case.
In State v. Cooper, 93-863, pp. 5-6 (La. App. 5 Cir. 3/16/94); 635 So.2d 301, 304, a case in which that defendant was convicted of attempted possession of cocaine, the Fifth Circuit discussed the role of circumstantial evidence as follows:
Because the defendant was convicted of attempted possession of cocaine, the State had the burden of proving beyond a reasonable doubt that the defendant had control over and thereby knowingly and specifically intended to possess the cocaine. LSA-R.S. 14:27; 40:967. State v. Bell, 566 So.2d 959, 960 (La. 1990). Moreover, given the central role of circumstantial evidence in the State's case, "[t]he rule as to circumstantial evidence is ... assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." LSA-R.S. 15:438.
The evidence presented by the State consisted primarily of testimony of Officers Randy Murphy and Jim Hembree of the Many Police Department, the persons responsible for the arrest of the Defendant. *654 Officer Murphy testified that the Many Police Department received an anonymous complaint regarding persons in a blue Chrysler attempting to sell drugs in the area of McFarland Street. Officer Murphy located a blue Chrysler at the Dew Drop Inn, a known drug hangout, in close proximity to McFarland Street. He began to question the driver, whom he recognized as Larry Vanzant, about the reported drug activities.
While Officer Murphy was speaking with Mr. Vanzant, he noticed the Defendant exit the passenger door of the vehicle and move quickly toward some patrons standing near the door of the Dew Drop Inn. Officer Murphy testified that the Defendant appeared "nervous or unsure of [his]self" and that an unidentified purple object protruded from his pants.[2] He instructed the Defendant to return to the vehicle until the questioning was complete. The Defendant turned and started walking toward the vehicle but then veered off and again started walking toward the group of people. The officer, once again, instructed Defendant to return to the vehicle. The Defendant did so, but didn't fully enter the car. Officer Murphy testified:
Well, as I said, he sat in the vehicle with his feet hanging out of the vehiclehe didn't get all the way back in thereI asked him, sir, could you please just get back in the vehicle and shut the door, we shouldn't be much longerI kept stressing that, trying to calm the situation. He didn't doso he kept squirming around in the seat, so I leaned over, I said, sir, could you please get back in the vehicle at which point I seen him go forward as though he was leaning overI leaned aroundnow, we're standing in the center of the rear of the vehicle looking at himas I seen him go over, I went over as well. As he leaned over, I heard something hit the ground. Of course, the first thing that comes to my mind, "I'm thinking weapon when it hits the ground." So I proceeded up to himI didn't see anything between his feetI picked him up and cuffed him and brought him back there with me and Mr. Vanzant, therefore, I could watch `em both till Officer Hembree arrived.
Upon his arrival, Officer Hembree was advised of the situation. Hembree looked beneath the car and discovered a matchbox containing razor blades and four or five rocks of crack cocaine. At that point, Officer Murphy arrested the Defendant. Thereafter, Larry Vanzant consented to a search of his vehicle. Several rocks suspected of being crack cocaine were discovered in the passenger compartment of the car. However, the crime lab confirmed that only one of the rocks was actually crack cocaine.
In Cooper, 93-863; 635 So.2d 301, the investigating officer testified that he followed a suspect down a dark alleyway. When he had closed the distance to within three feet, he observed the defendant make a tossing motion. A subsequent search of the area revealed a matchbox "which they described as clean, and neither wet nor muddy, and which contained six rocks of cocaine." Id. at p. 6, 304-305. The defendant's conviction of attempted possession of cocaine was upheld.
In the present case, the lighting was adequate, and Officer Murphy was in a position to clearly see the Defendant. As to the matchbox containing the cocaine discovered underneath the vehicle, while Officer Murphy testified that he neither saw the Defendant actually possess nor throw the matchbox[3], he did testify that *655 he was certain that the Defendant had thrown the box containing cocaine beneath the car. Officer Murphy's conclusion was based on the suspicious activity of the Defendant, including, but not limited to, the way he was seated, half in and half out of the car, Defendant's bending rapidly forward, and the concurrent sound heard beneath the vehicle.
Similar to the facts presented in Cooper, Office Murphy had a clear view of the Defendant as the events transpired. Further, evidence tends to establish that the matchbox discovered had not been exposed to the elements for any length of time. Both officers testified that it was not raining on the evening in question, and it was daylight at the time of the arrest. The parking lot was constructed of gravel and dirt. Though Officer Murphy never touched the box containing the cocaine, he said that it did not appear that the box had been exposed to the gravel and dirt for any length of time prior to discovery. This testimony was corroborated by Officer Hembree who actually had control of the evidence. The box containing the cocaine was never tested for prints.
Defense counsel argues in brief that there was insufficient evidence presented at trial to establish that the Defendant had the requisite intent to possess the cocaine. Whether there was sufficient evidence presented at trial to uphold the conviction for attempted possession of cocaine was a question for the trier of fact.
The Defendant does not contest the fact that crack cocaine was found at the crime scene. Principally, he argues that the circumstantial evidence presented by the State was insufficient to establish that he had actual control or dominion over the substance found by the police. When a conviction is based on direct and circumstantial evidence, the facts established by the direct evidence and the facts reasonably inferred by the circumstantial evidence must be sufficient for a reasonable juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Jacobs, 504 So.2d 817 (La.1987).
The record indicates that the State proved that the Defendant was seen exiting the passenger side of the blue Chrysler where cocaine was subsequently discovered. Officers discovered evidence in close proximity to the passenger compartment where the Defendant was seated. The Defendant acted suspiciously subsequent to his exiting the vehicle and only complied with the officer's request to return to the car after several requests. In addition, cocaine was found beneath the vehicle, and the Defendant's observed throwing motion was followed by a sound consistent with something hitting the ground. Furthermore, the transactions above occurred in an area frequented by drug users and where regular illicit activity occurred.
Defendant was also in possession of over $200.00 in cash, a fact which supports the suspicion of dealing in illegal drug transactions. We note that the Defendant's grandmother, Rose Lee Page, testified that she had given the Defendant $200.00 to purchase clothes and that she had seen the Defendant in possession of the purple bag on the day in question. However, it appears that the jury chose not to believe this testimony.
Officer Murphy testified that he never saw the Defendant in possession of the cocaine. However, for a conviction of possession of cocaine, actual possession need not be found; instead, Defendant could be found guilty of constructive possession. State v. President, 97-1593 (La. App. 3 Cir. 7/15/98): 715 So.2d 745.
To prove constructive possession, the State must show that the substance was within the defendant's dominion and control or in his joint possession. State v. Trahan, 425 So.2d 1222 (La.1983); State v. Smith, 257 La. 1109, 245 So.2d 327 (La.1971); State v. Williams, 546 So.2d 963 (La.App. 3 Cir.1989). See also State v. Harvey, 463 So.2d 706 (La.App. 4 Cir.1985); State v. Newberry, 560 *656 So.2d 121 (La.App. 3 Cir.1990). Several factors may be considered when determining dominion and control:
[D]efendant's knowledge that illegal drugs are in the area; the defendant's relationship with the person found to be in actual possession; the defendant's access to the area where the drugs were found; the evidence of recent drug use by the defendant; the defendant's physical proximity to the drugs; and any evidence that the particular area was frequented by drug users.

State v. Franklin, 96-1346, p. 5 (La.App. 3 Cir. 4/16/97); 693 So.2d 219, 222, citing Bujol v. Cain, 713 F.2d 112 (5 Cir. 1983); see also State v. Tasker, 448 So.2d 1311, 1314 (La.App. 1 Cir.), writ denied, 450 So.2d 644 (La.1984).
Id. at p. 8, 749-50.
See also State v. Laws, 95-593 (La.App. 3 Cir. 12/6/95); 666 So.2d 1118, writ denied, 96-0089 (La. 9/13/96); 679 So.2d 102.
The simple fact that the Defendant was present in an area where illicit drugs are found is insufficient to prove constructive possession. The mere presence of the drugs in the vehicle is insufficient to prove constructive possession. The Defendant must be found to knowingly and willingly share the right to control the drug. Id. Criminal intent is an essential element of the crime which may be inferred from the circumstances presented at trial. Contraband discovered in immediate access to a defendant may establish a reasonable inference that the cocaine in fact belonged to the defendant, a determination of whether there is possession of drugs sufficient to convict depends on the facts of each case. Trahan, 425 So.2d 1222.
As to the cocaine found in the vehicle, there is neither evidence that the Defendant had actual knowledge of the drugs in the car nor is there evidence of his relationship with the owner of the vehicle, Larry Vanzant. Further, there was no testimony or evidence adduced that any of the drugs were owned by Mr. Vanzant. However, Mr. Vanzant is a known drug user who, at the time of the trial, had a charge for distribution of a controlled dangerous substance pending against him. Considering all the facts of the case: Defendant and Vanzant were found traveling together in the blue Chrysler, whose occupants were suspected of drug dealing; drugs were found both in the car and in an area immediately outside of the vehicle to which Defendant had ready access; and the car and suspects were in a known drug trafficking area; a juror may have reasonably inferred that a relationship existed between Larry Vanzant and the Defendant. This is true even considering that no evidence was introduced indicating that the Defendant was a habitual drug user.
In State v. James, 604 So.2d 180, 182 (La.App. 4 Cir.1992), evidence was found in the open console of the vehicle: "The drugs were in the open and their presence in the car was evident to defendant; the drugs were less than an arm's length from defendant; the location of the drugs provided defendant with easy and immediate access to them."
In State v. Cormier, 94-537 p. 2 (La. App. 3 Cir. 11/2/94); 649 So.2d 528, 529 Officer Bergeron testified at trial as follows:
[Cormier] appeared to be very nervous and startled. He kept asking me why I stopped him. Finally I went ahead and told him the traffic violation that he had committed.... And that he was observed making a hand to hand transaction in a high crime, drug trafficking area which led us to suspect that illegal narcotics or weapons could be in the car.
The investigating officer testified that after removing the three passengers from the car he searched the vehicle for illegal narcotics. A small clear plastic bag containing four rocks of crack cocaine was recovered from the floorboard of the front passenger side of the car. Although the *657 court found that the defendant was not in actual possession of the cocaine, it did conclude the facts were sufficient to indicate knowledge of the cocaine and sufficient dominion and control to establish constructive possession.
As to the cocaine found underneath the vehicle, Defendant's suspicious behavior followed by the sound of something striking the ground in itself appears sufficient for a reasonable jury to infer that the matchbox was disposed of by the Defendant. While there exists no direct evidence that the Defendant had knowledge of the existence of drugs under the vehicle other than Officer Murphy's uncontradicted testimony, circumstantial evidence indicates that the Defendant did, in fact, dispose of the contraband when confronted by the officer. The way the Defendant was seated in the car, with his feet on the ground outside of the vehicle, placed him in a position where he was the most likely person to have thrown the object Officer Murphy heard hit the ground. Additionally, the Defendant was arrested in close proximity to where the drugs were subsequently discovered (directly under the car where he was seated), an area to which he had immediate access. Further, there was no testimony or evidence introduced that would lead one to believe that some other individual may have thrown the matchbox.
Again, whether there is sufficient evidence to constitute constructive possession is the question for the trier of fact. In convicting the Defendant of attempted possession of cocaine, the jury apparently believed the testimony of Officers Murphy and Hembree over the contrary inferences offered by the Defense. The direct and circumstantial evidence presented was sufficient in their eyes to establish actual possession or alternatively, an attempt by the Defendant to possess the cocaine.

CONCLUSION
After viewing the evidence in the light most favorable to the prosecution, we conclude that the evidence presented was sufficient for a reasonable jury to conclude that the contraband found was either constructively possessed by the Defendant or that he was attempting to possess the cocaine, beyond a reasonable doubt. Therefore, Defendant's conviction and sentence are affirmed.
AFFIRMED.
AMY, J., dissents and assigns reasons.
AMY, J., dissenting.
I agree with the majority's analysis of the assignment regarding insufficiency of the evidence, and, solely considering that issue, an affirmation would be warranted. However, I respectfully dissent from the majority's opinion because of the discussion regarding the error patent, as I find that the record is insufficient to determine whether the Defendant, in fact, voluntarily waived his right to be present at jury selection. Regarding the requirement of the Defendant's presence in court, La. Code Crim.P. art. 831 provides, in pertinent part:
A. Except as may be provided by local rules of court in accordance with Articles 522 and 551, a defendant charged with a felony shall be present:
(3) At the calling, examination, challenging, impanelling, and swearing of the jury, and at any subsequent proceedings for the discharge of the jury or a juror.
Although the Defendant's presence is required by law, that presence may be waived. La.Code Crim.P. art. 832 was amended by Acts 1997, No. 718, § 1, and now provides the following mechanism for waiver of the Defendant's presence:
A. A defendant initially present for the commencement of trial shall not prevent the further progress of the trial, including the return of the verdict, and shall be considered to have waived his right to be present if his counsel is present or if the right to counsel has been waived and:

*658 (1) He voluntarily absents himself after the trial has commenced, whether or not he has been informed by the court of his obligation to be present during trial.
Although the offense now at issue was allegedly committed prior to this amendment, the procedural law in effect at the time of trial governs. See State v. Williams, 216 La. 419, 43 So.2d 780 (1950). Therefore, newly amended article 832 applies to the instant matter. Moreover, the jurisprudence indicates that "[a] defendant who freely and voluntarily absents himself from his trial waives his right to be present." State v. Tate, 95-1152, p. 2 (La.App. 3 Cir. 3/6/96); 670 So.2d 671, 672.
The following colloquy between the trial judge and defense counsel is the only evidence regarding the Defendant's waiver contained within the record:
THE COURT: Mr. Montgomery is currently getting dressed and Mr. Soileau, if you'd be kind enough to go ahead and waive his presence---
MR. SOILEAU: I'll waive his presence.
Thus, in my opinion, it is unclear whether the Defendant had any indication whatsoever that his attorney was waiving his presence for him. Therefore, I would remand this matter to the trial court for contradictory proceedings directed at evaluating the voluntariness of the Defendant's alleged waiver of his right to be present during jury selection. Only if there was no due process violation regarding the Defendant's absence from jury selection, would I affirm the Defendant's conviction.
NOTES
[1] If the Defendant's contention that there was insufficient evidence presented at trial to support the conviction of attempted possession is correct, the evidence presently before the court must be sufficient to support the charged crime of possession of cocaine, to uphold the conviction. Therefore, evidence of possession, either actual or constructive, would be sufficient to uphold the responsive verdict of attempted possession of cocaine. See State ex rel. Elaire v. Blackburn, 424 So.2d 246 (La.1982), cert. denied, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983). We note, however, Defendant did not object to the responsive charge of attempted possession of cocaine.
[2] At the time of the arrest, the officers determined that the object was a Crown Royal bag containing cash.
[3] In an affidavit in support of arrest without a warrant Officer Murphy stated that he saw the Defendant "... throw a matchbox underneath the vehicle." At trial, he admitted that the statement in the affidavit was inaccurate. He explained that it was actually a conclusion based on what he saw and heard and upon the fact that Officer Hembree recovered the matchbox from beneath the car.